UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION,**

Petitioner,

v.

**CHURCH & DWIGHT CO., INC.,**

Respondent.

Misc. No. 10-149 (JMF)

**MEMORANDUM OPINION**

This case has been assigned to me for all purposes. On October 29, 2010, I entered a judgment in favor of the petitioner, the Federal Trade Commission ("FTC"). Order of October 29, 2010 [#22]. Before me now are Church & Dwight, Co., Inc.'s Motion to Stay Pending Appeal [#27] and Petitioner Federal Trade Commission's Emergency Motion for an Enforcement Order Requiring Full Compliance with the District Court's October 29 Order or Requiring Church & Dwight Co., Inc. to Show Cause Why It Should Not Be Held in Contempt [#28].

The only portion of my October 29, 2010 order [#22] to which Church & Dwight ("C&D") presently takes exception is my refusal to permit it to produce documents to the FTC that were redacted to obliterate the portion of the documents that C&D claims do not relate to its sale of condoms. The FTC asks me to order C&D to produce the unredacted documents, while C&D asks me to stay my October 29, 2010 order pending the resolution of the appeal it has taken.

**I.     MOTION TO STAY**

I had recent occasion to speak to the standards for granting a stay pending appeal, wherein I stated:

> Last year the Supreme Court described the "traditional standards" for the issuance of a stay pending appeal as follows: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 129 S.Ct. 1749, 1756 (2009).

Friendship Edison Public Charter School Collegiate Campus v. Nesbitt, 704 F. Supp 2d 50, 51 (D.D.C. 2010).

The court of appeals has emphasized that the traditional factors are "typically evaluated on a 'sliding scale.'" Id. at 52 (quoting Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009)).  Thus, a strong showing of one factor may excuse a relatively weaker showing on another. Id.

**A.     Likelihood of Success on the Merits**

The first factor concerns the likelihood that the stay applicant will be successful with his appeal. While, as noted above, all factors need not be of equal weight, it is necessary for a petitioner to show "a substantial indication of probable success," to justify "the court's intrusion into the ordinary processes of administration and judicial review." Washington Metro. Area Transit Com. v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977).  The necessary showing on the merits, in turn, is "governed by the balance of equities as revealed through an examination of the other three factors." Id. at 844.  The moving party is not required to show assured success on appeal. Id.  Rather, if there are

questions raised that go to the merits of a case that are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation," the balance of equities will be in favor of a stay. Id. (quoting Hamilton Watch Co. v. Revlon, Inc., 483 F.2d 953, 954 (2d Cir. 1973) (per curiam)).

        1.     *The Seriousness of the Issues on Appeal*

C&D asserts that it has raised serious legal questions on its appeal, such that a stay is warranted. Church & Dwight Co., Inc.'s Reply to Petitioner Federal Trade Commission's Opposition to Church & Dwight Co., Inc.'s Motion to Stay Pending Appeal ("C&D Reply") [#33] at 3. In particular, C&D claims that its appeal "raises serious legal questions concerning the interpretation and continuing validity of *Texaco*."[1] Memorandum in Support of Church & Dwight Co., Inc.'s Motion to Stay Pending Appeal ("C&D Memo.") [#27-1] at 5. C&D alleges that "the *Texaco* standard and/or its application in the district courts requires clarification by the D.C. Circuit, after thirty years, as to how the 'reasonably relevant' prong of the standard is to be employed–and how far it can be stretched by the government." Id. at 6. C&D adds that "in the current technological age, with the added demands of e-discovery obligations, Texaco needs to be revisited as the burdens on corporations and prevalence of sweeping searches grow." Id. C&D likens this case to Al-Adahi v. Obama, 672 F. Supp. 2d 81 (D.D.C. 2009), wherein the court determined that the appeal "raise[d] serious and difficult issues, including the proper application of the well-established evidentiary standard in habeas corpus to the facts presented in this case." Id. at 83; C&D Reply at 3.

---

[1] FTC v. Texaco, 555 F.2d 862 (D.C. Cir. 1977) (en banc).

The FTC, in turn, objects to C&D's raising these issues on appeal, because C&D did not raise the issue of Texaco's needing to be "clarified" in this Court. Petitioner Federal Trade Commission's Opposition to Church & Dwight Co., Inc.'s Motion to Stay Pending Appeal ("FTC Opp.") [#29] at 3. The FTC claims that, because C&D failed previously to raise its arguments regarding the interpretation of Texaco, it has waived those arguments on appeal. Id. at 3-4. Indeed, as the FTC points out, C&D relied heavily on Texaco in support of its own position. See, e.g., Church & Dwight Co., Inc.'s Opposition to the Petition of the Federal Trade Commission for an Order Enforcing Subpoena *Duces Tecum* and Civil Investigative Demand [#17] at 24. In response, C&D claims that its grounds for appeal, "which resulted in serious legal questions," did not arise until the Court issued its opinion. C&D Reply at 4.

It is not my place to decide this question; however, I will note that the argument is compelling enough to raise significant questions concerning C&D's likelihood of success on appeal. As for the seriousness of the issues to be addressed, I find C&D's equating a reconsideration of Texaco with the substantial issues at stake in Al-Adahi to be questionable. Al-Adahi concerned the delicate balance of habeas corpus and national security; furthermore, had the stay not been granted, and the case reversed on appeal, it was likely the government would never have recovered the defendant. Al-Adahi, 672 F. Supp. 2d at 83. Those circumstances are a far cry from the facts in this case.

C&D's "e-discovery obligations" argument is a red herring. As the FTC correctly points out, it is only requesting that C&D produce documents that contain information concerning condom products in an unredacted form. FTC Opp. at 5-6. C&D would be producing the same set of documents, merely with redactions made (a process which

would involve greater time and expense than turning over the documents without redactions). The question of technological advances as they may bear on the validity of Texaco is not relevant to this case.

To speak plainly, it appears less that C&D is claiming that anything is wrong with Texaco, and more that it is claiming that there is something wrong with my interpretation of that case. That is no different from most appeals cases.

        2.     *The Merits of the Issues on Appeal*

I wish to focus on one of C&D's key refrains throughout its briefing on the stay. C&D repeatedly quotes a sentence from my October 29, 2010 Memorandum Opinion, wherein I stated, "By the broad standards of Morton Salt and Texaco, it is entirely plausible that information appearing in the same document with relevant information concerning C&D's male condoms would itself be relevant to the investigation." FTC v. Church & Dwight Co., Inc., 10-mc-149, 2010 WL 4283998, at *5 (D.D.C. Oct. 29, 2010). C&D fixates on the words "*entirely plausible*" (italics C&D's), and accuses me of misreading the standard set out in Texaco. The sentence following the quoted statement is as follows: "The requested materials, including those portions that do not obviously concern male condoms, need only be reasonably relevant to the investigation, not to any potential outcome. ISC, 965 F.2d at 1090." Id. Thus, when read in the full context, I am not deviating from the "reasonably relevant" standard, but reinforcing it.

Furthermore, it is the burden of the respondent–not the petitioner, and not the Court–to show that the information it wishes to withhold is irrelevant to the investigation. FTC v. Invention Submission Corp., 965 F.2d 1086, 1090 (D.C. Cir. 1992) ("[I]n light of the broad deference we afford the investigating agency, it is essentially the respondent's burden to show that the information is irrelevant"). C&D failed to demonstrate anything

5

of the sort, and to read my "entirely plausible" phrasing as meaning something other than the well-established "reasonably relevant" standard is truly to split hairs.

Finally, C&D continues to emphasize the language in the subpoena and civil investigative demand that turns in its favor, and to ignore the language that undercuts its argument. C&D reprints the paragraph from the FTC's Resolution Authorizing Use of Compulsory Process in a Non Public Investigation ("Resolution") concerning the nature and scope of the investigation thusly:

> To determine whether Church & Dwight, Co., Inc. has attempted to acquire, acquired, or maintained a monopoly in ***the distribution or sale of <u>condoms</u> in the <u>United States</u>***, or in any part of the commerce, through potentially exclusionary practices including, but not limited to, conditioning discounts or rebates to retailers on the percentage of shelf or display space dedicated to Trojan brand condoms and other products distributed or sold by Church & Dwight, in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. Section 45, as amended.

C&D Memo. at 2 (emphasis C&D's).

It must be recalled that, as I pointed out in my opinion, "[t]he FTC resolution itself states that the investigation will concern itself with 'potentially exclusionary practices including, but not limited to, conditioning discounts or rebates to retailers on **the percentage of shelf display space dedicated to Trojan brand condoms and other products distributed or sold by Church & Dwight**.'" FTC, 2010 WL 4283998, at *6 (emphasis added). While I cannot say the question is free from doubt, I also cannot say that the redactions C&D made were so clearly correct that reversal of my order is more likely than not.

**B.      Likelihood of Irreparable Injury to the Applicant if the Stay is Denied**

6

A showing of irreparable harm is crucial. See Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985) ("We believe that analysis of the second factor disposes of these motions and, therefore, address only whether the petitioners have demonstrated that in the absence of a stay, they will suffer irreparable harm"). For harm to be "irreparable"–that is, for legal remedies after the fact to be inadequate to restore the party seeking a stay if the stay is not granted–the injury must be both certain and great; economic harms must threaten "the very existence of the movant's business," and the movant must substantiate the claim that irreparable injury is likely to occur. Id.; see also Virginia Petroleum Jobbers Ass'n, 259 F.2d 921, 925 (D.C. Cir. 1958) ("[T]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm").

C&D has failed to clearly identify irreparable harm that would result were its motion for a stay denied. It claims that it "will suffer obvious irreparable injury if compelled to produce tens of thousands of pages of wholly irrelevant non-condom information to the FTC during the pendency of its appeal;" however, as noted above, it would produce the same documents, with non-condom-related portions redacted (again, I am sure at great time and expense) if C&D had its way. Thus, there is no economic harm resulting from a denial of the stay.

C&D also claims that it will suffer irreparable harm because, "[o]nce the FTC staff has and digests the *very information in dispute*, the rights Church & Dwight is attempting to protect will be irreversibly violated." C&D Memo. at 7. The "rights Church & Dwight is attempting to protect," however, are unclear. Id. C&D claims to

7

pursue the appeal and stay "to protect its confidential and business sensitive information," but it is not clear what irreparable harm will actually result from the disclosure. Id.

It is not an irreparable harm in and of itself for the FTC to see information it would not be entitled to see were my October order reversed. While that may be harm, it is not irreparable. If C&D produces the unredacted documents in accordance with my order, its doing so cannot possibly be deemed a waiver of any right to claim that the production I ordered was illegal. Hopson v. Mayor & City Council, 232 F.R.D 228, 241-242 (D. Md. 2005) (compelled disclosure not a waiver).[2] C&D would reserve its right to claim that the FTC's consideration of the unredacted documents was improper and illegal, and tainted any investigation that led to charges against it by the FTC. In that sense, it is the FTC who, by insisting on enforcement pending appeal, is rolling the dice. It runs the risk that its investigation will be irreparably tainted if my order was wrong, but it insisted on the unredacted documents before my order could be considered on appeal. More importantly, C&D's right to argue that the FTC's investigation was tainted by the production makes any resulting harm capable of being repaired.

An analogy is helpful. In United States v. Philip Morris, Inc., 314 F.3d 612 (D.C. Cir. 2003), the court of appeals permitted an interlocutory appeal of a lower court decision denying that certain documents were privileged. It was significant to the court of appeals that if an interlocutory appeal were not permitted, the privileged documents would be disclosed, and "[t]he implications of this use of privileged material would be very difficult to remedy on appeal." Id. at 622. Attorneys for the opposing party, the

---

[2] Accord: 1 David M. Greenwald, Edward F. Malone & Robert R. Stauffer, TESTIMONIAL PRIVILEGES, § 1.75 at 1-292 (3d ed 2005).

8

United States, would gain valuable new leads from the disclosure, and "it would be impossible for a court to sort out and redress the harm caused by the incorrect disclosure." Id. at 619. The Supreme Court reversed, concluding that "vacating an adverse judgment and remanding for a new trial in which the protected material and its fruit are excluded from evidence" sufficed. Mohawk Indus., Inc. v. Carpenter, 130 S.Ct. 599, 607 (2009).

Identically here, C&D remains free to protest after judgment that the FTC went too far, and my order permitted it greater disclosure than could be required. Surely, if the post-judgment remedy sufficed as adequate protection for such a clear right as attorney-client privilege, it is sufficient to provide similar protection when the only claim is irrelevancy or overbreadth. Production of the unredacted documents does not confront C&D with irreparable harm.

## C. Whether the Issuance of a Stay Will Substantially Injure Other Interested Parties, and Where the Public Interest Lies

The remaining two factors are of little help here. No third parties will be affected by the stay, and the public interest appears to rest in equipoise. While, as C&D points out, there is a public interest in containing an administrative agency within the bounds set by the Congress that created it, there is an equal interest in the FTC's fulfilling its statutory command to investigate, and then prevent, anti-competitive activity that raises the prices that citizens must pay for the goods they purchase. Thus, the public interest militates neither in favor of nor against the stay.

## II. MOTION TO ENFORCE

Having denied C&D's motion to stay, the emergency aspect of the FTC's motion for an enforcement order is moot. In light of C&D's failure to comply, however, I will

grant the FTC's motion in its other aspects, and require full compliance with the Court's October 29, 2010 order, or require C&D to show cause why it should not be found in civil contempt.

## III. CONCLUSION

I will deny Church & Dwight, Co., Inc.'s Motion to Stay Pending Appeal [#27]. I will grant Petitioner Federal Trade Commission's Emergency Motion for an Enforcement Order Requiring Full Compliance with the District Court's October 29 Order or Requiring Church & Dwight Co., Inc. to Show Cause Why It Should Not Be Held in Contempt [#28] to the extent that I will require C&D's full and immediate compliance with my order of October 29, 2010, or, if it does not comply, I will require C&D to show cause why it should not be held in civil contempt. I will, however, stay my order until January 11, 2011, to permit C&D to seek relief in the court of appeals.

A separate Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE